FILED

MAR 10 2003

DAVID W. DANIEL, CLERK
US DISTRICT ⟨ ⟩ EDNC
BY_____ DEP. CL⎯⎯⎯

| | |
|---|---|
| FELIPE DE JESUS DE LUNA-GUERRERO and BALDOMERO GUTIERREZ DE LUNA, on behalf of themselves and all other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH CAROLINA GROWER'S ASSOCIATION, INC., and MARCUS THIGPEN, on behalf of himself and all other similarly situated members of the North Carolina Growers Association, Inc.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.:<br>)     4:02-CV-173-H(4)<br>)<br>)<br>) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND TO SEND COURT-SUPERVISED NOTICE TO PUTATIVE MEMBERS OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 126(b)

### Introduction

This case arises from the employment of H-2A workers by member growers of

the North Carolina Growers Association, Inc. ("NCGA"), of which Defendant Marcus

Thigpen is one. The named Plaintiffs contend that the Defendants required them to pay

for their visas and for certain transportation expenses to enter the United States from

Mexico and failed to reimburse them in their first workweek. The named Plaintiffs

contend that this allegedly resulted in a *de facto* deduction from their first week's wages

that took them below the federal minimum wage and was therefore in violation of the

federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* and the wage payment

SCANNED

provisions of the North Carolina Wage and Hour Act, and constituted a breach of the named Plaintiffs' Agricultural and Food Processing Clearance Order with the Defendants. Plaintiff Felipe De Jesus De Luna-Guererro ("Plaintiff") has filed a Motion for Conditional Certification of Collective Action and to Send Court-Approved Notice to Putative Members of Collective Action Pursuant to 29 U.S.C. § 126(b) (hereinafter, "Plaintiff's Motion"), requesting conditional certification[1] of a collective action.

The Defendants contend that the Plaintiff's Motion is premature given the substantial likelihood that this Court's ruling on Defendants' Motion for Summary Judgment, which is being filed on the same day as this Opposition, will likely obviate the need for the parties and this Court to spend considerable time and resources on the onerous procedures associated with Court-supervised notice and management of a class.

To the extent that the Court decides to rule on Plaintiff's Motion, Defendants contend that the potential class of plaintiffs has not been adequately defined. Moreover, Plaintiff has failed to establish that the members of the proposed class are sufficiently similarly situated to justify treating this case as a collective action. Accordingly, Plaintiff's Motion should be denied. Finally, the Plaintiff's proposed notice is ambiguous and improper and is likely to lead to unnecessary litigation.

### Statement of Facts

NCGA is a non-profit corporation that provides various services to its membership of approximately 982 owners or operators of agricultural establishments ("Members"), of which Defendant Marcus Thigpen is one. See Exhibit A, Affidavit of

---

[1]      Class certification has no applicability in an FLSA collective action. Unlike under Fed. R. Civ. P. 23, in an FLSA representative action, "no employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. 216(b).

Stan Eury, previously filed in Support of Defendants' Opposition to Plaintiff's Motion for Bilateral Certification ("Eury Aff."), Para. 2. Among the services NCGA provides is assistance in securing foreign agricultural labor through the federal H-2A temporary agricultural program. *Id.* The H-2A program establishes a means for U.S. employers to employ foreign workers to perform temporary or seasonal agricultural labor in the United States. *Id.*

Plaintiff Felipe De Jesus De Luna-Guerrero ("Plaintiff") was one of approximate 35 H-2A workers hired by Defendant Thigpen each season from 1996 through 2000. *Id.,* Para. 5. Plaintiff began the 2001 season with Defendant Thigpen but resigned and was hired by another NCGA grower, Mr. Shatley, during the season. *Id.* Plaintiff abandoned this job on July 31, 2001. *Id.* Leaving before the end of the season is in breach of his contract and in violation of the guidelines of the H-2A program and applicable immigration laws and regulations. *Id.* Upon information and belief, Plaintiff is living illegally in the United States. *Id.*

Although NCGA assisted Plaintiff in obtaining work with various NCGA member growers, Plaintiff never performed any work for NCGA.

### Standard For Collective Actions

Section 216(b) of the FLSA authorizes a plaintiff alleging FLSA violations to file suit "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. §§ 216(b). Those wishing to participate must give written consent in order to become a party plaintiff. These collective actions, as they are known, are intended to serve the interests of judicial economy through resolution in a single proceeding of claims stemming from common issues of law and fact, and to aid in the vindication of plaintiffs'

rights by lowering the individuals' costs with a pooling of claims and resources. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170-71 (1989). Such goals cannot be met without allowing a court to manage the process of notification and joinder of additional parties. The Supreme Court has determined, and circuit courts reviewing the issue have held that "district courts have the discretion, in appropriate cases, to implement §§ 216(b) by facilitating notice to potential plaintiffs." *Shaffer v. Farm Fresh,* 966 F.2d 142, 147 (4th Cir.1992) (quoting *Hoffmann,* 493 U.S. at 169-70). However, the approval of notice is not mandatory, but rather discretionary, and the Supreme Court has warned that such intervention "is distinguishable in form and function from the solicitation of claims." *Hoffmann,* 493 U.S. at 174.

It is the preservation of this distinction that has led courts to attempt to set out a test for issuance of notice. The statute itself provides the threshold criteria for evaluation; potential plaintiffs must be "similarly situated." 29 U.S.C. §§ 216(b). *See also Dybach v. Florida Dep't of Corrs.,* 942 F.2d 1562, 1567 (11th Cir.1991). Plaintiffs bear the burden of establishing that they and any opt-in Plaintiffs are similarly situated. *See Grayson v. K-Mart Corp,* 79 F.3d 1086, 1096 (11th Cir. 1996). Courts employ different standards to determine whether plaintiffs have made a sufficient showing to warrant court-facilitated notice. In this Circuit, courts require a plaintiff to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists before court assistance is granted. *Camper v. Home Quality Management, Inc.* 200 F.R.D. 516, 519 citing *D'Anna v. M/A-COM, Inc.,* 903 F.Supp. 889, 893-94 (D.Md.1995). Mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made. *See, e.g., Sperling v. Hoffman-LaRouche, Inc.* 118 F.R.D. 392,

406-07 (holding that evidence of "similarly situated" plaintiffs must be "sufficiently developed" to allow court facilitated class notice), *aff'd in part, dismissed in part*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989); *accord Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn. 1991) ("As a matter of sound case management, a court should, before offering such assistance, make a preliminary inquiry as to whether a manageable class exists ... [P]laintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist"). In *D'Anna*, the court denied the plaintiff's request for court facilitated notice because the plaintiff provided "meager factual support for [his] vague allegations." *D'Anna*, 903 F.Supp. at 894. *See also H & R Block, Ltd, v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (denying request for court facilitated notice because the only evidence of similarly situated class members was conclusory affidavits stating the individuals' beliefs that others had been subjected to similar discrimination).

Although the Court need not reach a conclusive determination whether a class of similarly situated plaintiffs exists at the notice stage, there must be, at a minimum, evidence of such a potential class "sufficiently developed at this time to allow court-facilitated class notice." *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.), aff'd in part and dismissed in part, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 303-04 (N.D. Cal. 1991).

Where plaintiffs have failed to meet their burden, courts have not hesitated in refusing to authorize notice. *See, e.g., Hall v. Burk*, 2002 WL 413901 (N.D. Tex. March 11, 2002) (denying motion for notice of collective action where Plaintiff's only proof of a

widespread violation of the FLSA is the conclusory allegation that other employees were subjected to improper deductions from wages)(Attached); *D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 893 (D. Md. 1995) (Plaintiff's allegations were too "broad and vague" and lacked "factual support for the existence of a potential class); *Haynes v. Singer Co.*, 696 F. 2d 884 (11th Cir. 1983) (upholding district court's refusal to authorize state-wide notice based only on "counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); *see also Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 948 (M.D.Fla.1994) (plaintiffs failed to show that employees at truck terminals other than the terminal where the named plaintiffs worked were similarly situated to the named plaintiffs).

### Sending Notice to a Putative Class is Premature

Defendants filed a Motion for Summary Judgment on the same day this opposition was filed. In its Motion for Summary Judgment, Defendants argue that both the plain language and any logical interpretation of the applicable statutes and regulations mandates a finding that Defendants did not violate the FLSA. Any other result would create an irreconcilable and unnecessary conflict between the DOL's regulations promulgated under the FLSA and the DOL's regulations governing the H-2A program. Moreover, any other result would be improper retroactive "legislation." It would also be supremely unfair to NCGA and its member growers, in that the DOL has three times in the last ten years said that it is reviewing the de facto deduction issue, has not taken a position yet, and is not prepared to find that employers are in violation. The N.C. Wage and Hour Act and breach of contract claims are based on Defendants' alleged violation of the FLSA; therefore, because Defendants did not violate the FLSA, they also have neither

violated the N.C. Wage and Hour Act nor breached the terms of the applicable Clearance Orders. Given the substantial burden associated with the notice process and the substantial likelihood that the Court will grant Defendants' Motion for Summary Judgment, the Court should not consider Plaintiff's Motion until after it has considered and ruled upon Defendants' Motion for Summary Judgment.

### The Proposed Class is not Adequately Defined

In the event that the Court decides to take up the collective action issue before ruling on Defendants' Motion for Summary Judgment, the Court should deny Plaintiff's Motion because the proposed class is not adequately defined. Plaintiff's definition of the proposed class purports to include employees of the NCGA. Nothing in the pleadings, motions or affidavits in the record establishes that the named Plaintiffs, or any member of the proposed class of Plaintiffs are or ever were employees of NCGA for purposes of paying wages under the FLSA. The NCGA is an organization established for the purpose of acting as a liaison between farm labor recruiters and North Carolina farmers. Eury Aff., Para. 12. The NCGA is not a farm, does not employ farm labor, and was not the Plaintiff's or any of the proposed class of plaintiffs' employer. The FLSA does not apply in the absence of an employer-employee relationship. *See* 29 U.S.C. §§ 206-07. Without evidence in the record to establish that NCGA is or was the employer of any of the Plaintiffs for purposes of the alleged failure to pay wages under the FLSA, it is improper to include any employees of the NCGA as part of the proposed class.

### The Members of The Proposed Class Are Not Similarly Situated

Plaintiff proposes a class of employees of Defendant Thigpen who may have worked for Defendant Thigpen in any one or more of the past three years. Thus, many of

the proposed Plaintiffs will not have worked for Defendant Thigpen during years that other Plaintiffs may have worked. Moreover, to determine the amount of money each Plaintiff may be owed, if any, the court will have to examine the factual circumstances surrounding each Plaintiff's case. Some Plaintiffs will have certain expenses that other Plaintiffs did not have. For instance, Plaintiff De-Luna-Guerrero claims that he should be reimbursed for $33 of expenses that he alleges he incurred traveling from his home village to Monterey, Mexico. *See* paragraph 5 of Plaintiff's Sworn Statement attached to his Motion. Each member of the proposed class of Plaintiffs will undoubtedly claim different travel expenses related to their travel from their village to Monterey, Mexico. Some of the Plaintiffs may only have a claim for expenses from Monterey, Mexico to the farm and for the visa expenses. Other Plaintiffs may not have any travel expenses whatsoever, and are merely claiming visa related expenses. Accordingly, there is no commonality of damages among the proposed class. *See Ray v. Motel 6 Operating, Ltd. P'ship.*, 1996 WL 938231 (D. Minn. Mar 18, 1996) (noting because the level of overtime for each employee varied for each plaintiff, there existed a "lack if commonality for damages.")(attached).

Each Plaintiff's claim also will vary depending on the number of hours they may have worked in their first workweek, and the hourly wage each was earning. In some cases, where the expenses claimed are minimal, there may be little or no valid claim for unpaid minimum wages, because even if the alleged expense were considered a deduction in the first workweek, the worker's pay after the deduction for that week may still have been at or above the FLSA minimum wage.

Plaintiff proposes a class that would include potential Plaintiffs who may have worked for Defendant Thigpen over a three-year period. Not all of the Plaintiffs in the proposed class worked during the same period, and thus were paid different wage rates, and likely incurred different expenses. The Court would have to conduct an individual analysis of the facts related to each Plaintiff's circumstances to adequately determine any damages. Given these dissimilarities among the potential Plaintiffs, the efficiencies of a collective action cannot be realized in this case.

Plaintiff has failed to establish an adequate record to show that the proposed class of plaintiffs are sufficiently similarly situated to support proceeding as a collective action.

### The Proposed Notice is Ambiguous and Improper

Even if the Court were to find that this case should be treated as a collective action, the notice to be sent to the putative class members proposed by Plaintiff is ambiguous and improper. First, the proposed notice is directed to employees of NCGA, as well as Defendant Thigpen. As discussed above, none of the putative class members were ever employed by NCGA, and thus any notice authorized should not be directed to NCGA employees.

Second, the Proposed Notice describes "recruitment expenses" as one of the expenses the lawsuit seeks to recover. However, nowhere in the lawsuit does Plaintiff allege that recruitment expenses were improperly deducted from his wages.

Finally, Defendants request that the notice process be administered by a third party, such that the names and addresses of the former or current employees be provided only to the third party, who will send the notices and receive any consents. The N.C. Farmworker Unit of the Legal Aid Society, for which, on information and belief,

Plaintiff's attorney Robert Willis previously worked, as well as other purported "public interest" organizations, have long sought to injure or shut down Defendants' businesses. *See* Eury Aff. Para. 14. Defendants submit that this lawsuit is being prosecuted as part of a larger scheme by such organizations to injure the Defendants. Defendants submit that if it were forced to provide Plaintiffs with a list of the names and addresses of its employees, there is substantial risk that such information would be used for improper purposes, unrelated to the issues in this lawsuit. A third-party administrator could be provided with the information necessary to send out the notices and receive any consents. Only contact information for those who opt-in to the lawsuit would be provided to Plaintiffs. Defendants would arrange for such administration, at their own expense. Such a process would not prejudice the Plaintiffs, and would protect the Defendants from potential abuse of the notice process.

Additionally, whether or not a third-party administrator is used, Defendants' counsel's contact information should also be listed on the notice so that they may be contacted by potential Plaintiffs who may have questions concerning the lawsuit. *See Parks v. Eastwood Ins. Servs., Inc.*, 235 F.Supp.2d 1082 (C.D. Cal. 2002).

### Conclusion

For the reasons stated above, the Defendants respectfully submit that the Plaintiff's Motion for Conditional Certification of Collective Action and to Send Court-Approved Notice to Putative Members of Collective Action Pursuant to 29 U.S.C. § 216(b) be denied; or, in the alternative, deferred until the Court rules on the Named Defendants' Motion for Summary Judgment on the merits; or, in the alternative, deferred

until discovery is had and a hearing held regarding the adequacy of the Plaintiff's evidence that a class of similarly situated plaintiffs exists.

This the _10_ day of March, 2003.

W. R. Loftis, Jr.
N.C. State Bar No. 2774


Virginia A. Piekarski
N.C. State Bar No. 25823

**OF COUNSEL:**

CONSTANGY, BROOKS & SMITH, LLC
100 N. Cherry St., Suite 300
Winston-Salem, NC 27101
Telephone: 336-721-1001
Facsimile: 336-748-9112

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
147 Lab.Cas. P 34,632
**(Cite as: 2002 WL 413901 (N.D.Tex.))**

United States District Court, N.D. Texas, Dallas Division.

Laura D. HALL, On Behalf of Herself and Others Similarly Situated Plaintiff,
v.
Linda L. BURK, M.D., Defendant.

**No. Civ. 301CV2487H.**

March 11, 2002.

*MEMORANDUM OPINION AND ORDER*

SANDERS , Senior J.

*1 Before the Court is Plaintiff's Expedited Motion for Notice to Potential Plaintiffs and Limited Expedited Discovery, filed February 7, 2002; and Defendant's Response thereto, filed February 19, 2002. Also before this Court is Plaintiff's Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery, filed February 12, 2002; and Defendant's Response thereto, filed February 22, 2002. Upon review of the pleadings, briefs, and relevant authorities, the Court is of the opinion for the reasons stated below that Plaintiff's Motion for Notice and for Limited Discovery should be DENIED, that Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery should also be DENIED, and that Plaintiff's Motion for a Protective Order should be DENIED.

I. BACKGROUND

Plaintiff alleges a violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 , et seq., on behalf of herself and other similarly situated former and current employees of the Defendant. (Compl. at 1). Defendant is an ophthalmologist who maintains two offices in Dallas, Texas. (Resp. Mot for Notice at 2). Plaintiff states that she began working for the Defendant in April 2000 and that the Defendant failed to pay her and other similarly situated employees the required time and a half for hours worked in excess of forty hours per week. (Compl. at 2). Plaintiff states that she and others were employed on a fluctuating workweek basis. *See* 29 C.F.R. § 778.114(a) (2001) . The requirements for a "fixed salary for fluctuating hours" plan are: (1) the employee's hours of work fluctuate from week to week; (2) there is a mutual understanding between the employee and employer that the salary will constitute straight time pay for the hours worked; and (3) the amount of salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he or she works is greatest. *Id.* The regulations provide that overtime pursuant to a fluctuating workweek plan is calculated at one-half the rate in addition to salary. *See* 29 C.F.R. § 778.114(a) (2001) . Plaintiff alleges that pursuant to the agreement she had with the Defendant, her salary should have been $13 per hour or $520 per week. [FN1] Plaintiff states, however, that Defendant failed to pay this base

salary and therefore, she should have received overtime payments calculated at one and one-half times her "hourly" rate because Defendant failed to comply with the requirements for a fluctuating workweek plan.

FN1. Plaintiff's statement that she was paid $13 per hour is puzzling. The regulations provide that under the fluctuating workweek plan, the hourly rate would change from week to week depending on the number of hours an employee worked. For example, an employee whose salary is $250 per week and "during the course of 4 weeks [ ] works 40, 44, 50, and 48 hours, [would have a] regular hourly rate of pay in each of these weeks [of] approximately $6.25, $5.68, $5, and $5.21." 21 C.F.R. § 778.114(b) (2001). Therefore, if Plaintiff was truly a fluctuating workweek employee, she would not have an hourly rate. Nevertheless, Defendant does not contest Plaintiff's assertions and admits that Plaintiff is owed overtime. (Resp. at 3).

Plaintiff asserts that other employees did not receive overtime payments in accordance with the FLSA. In furtherance of this claim, Plaintiff requests (1) the Court order that notice be provided to similarly situated employees under 29 U.S.C. § 216(b) ; (2) Court approval of the dissemination notice; and (3) limited discovery of the name, address, telephone number, date of birth, and social security number of all similarly situated employees. Defendant argues that Plaintiff has not made the requisite showing that this suit is proper for class treatment under the FLSA.

*2 In addition, after learning of Plaintiff's claims, Defendant alleges that she paid and obtained releases from other employees to whom she owed overtime pay. (Resp. Mot. to Void Releases at 3). Plaintiff contends that (1) the releases are void; (2) that the Court must approve corrective notice; (3) that a Protective Order issue to prevent Defendant from contacting putative members; and (4) that the Court permit limited discovery. Defendant contends that Plaintiff lacks standing to pursue voiding the releases and that corrective notice is unnecessary in this case.

II. ANALYSIS

A. Motion for Notice and Limited Discovery

The FLSA provides that a suit may be instituted "by one or more employees for or in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) . This type of class action, also called a collective or representative action, is different from a Fed.R.Civ.P. 23 class action in that the members of the class are permitted to "opt-in" rather than "opt-out" of the class. See Mooney, et al. v. ARAMCO Servs. Co., et al., 54 F.3d 1207, 1212 (5th Cir.1995) . Rule 23 and § 216 (b) class actions are "mutually exclusive and irreconcilable" and those who choose not to opt-in to an class action under § 216(b) are not bound by and may not benefit from the judgment. LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288-89 (5th Cir.1975) .

The Supreme Court has provided that District Courts have discretion to authorize notice to similarly situated employees that they may opt-in to a class, but that notice is by no means mandatory. See Hoffman -La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989) ; see also Camper, et al. v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D.Md.2000) ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion."). Although Sperling addressed the issue of whether District Courts have this discretion in Age Discrimination in Employment Act ("ADEA") cases, the ADEA incorporates § 216(b) of the FLSA. See id. at 167. In addition, other courts have held that the analysis in Sperling and other ADEA cases involving questions of the opt-in process should be applied to cases solely based on the

FLSA. *See H & R Block, Ltd. v. Housden & Beard,* 186 F.R.D. 399, 400 (E .D. Tex.1999) ; *see also Garner v. G.D. Searle Parmaceuticals & Co.,* 802 F.Supp. 418, 422 (M.D.Ala.1991) .

The determination of whether this Court should exercise its discretion involves the analysis of two tests, neither one of which carries more weight than the other. *See Mooney,* 54 F.3d 1207, 1216 (5th Cir.1995) . The first test derives from *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987) and involves a two prong analysis. First, the Court must make an initial inquiry into whether the Plaintiff has provided sufficient evidence that similarly situated potential Plaintiffs exist. *See Mooney,* 54 F.3d at 1213-14. At this stage, the Court uses a lenient standard to determine whether similarly situated persons exist, and if the Court determines that certification is appropriate, then it usually "conditionally certifies" the class. *See id at 1214.* Second, the Court reexamines the class after notice, time for opting-in, and discovery have taken place. *See id.* If the Court finds that the class is no longer made up of similarly situated persons, then it may decertify the class. *See id.* This inquiry is usually conducted upon a motion filed by the Defendant. *See id.*

**\*3** In pursuit of the first inquiry, this Court finds that Plaintiff failed to present sufficient evidence that similarly situated Plaintiffs exist. Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden. *See Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir.1983) . Some Courts have found class certification appropriate where potential Plaintiffs were identified. *See Garner & Karn v. G.D. Searle Pharmaceuticals,* 802 F.Supp. 418, 422 (M.D.Ala.1991) . Other Courts have looked to affidavits of potential plaintiffs. *See Belcher v. Shoney's, Inc.,* 927 F.Supp. 249, 252 (M.D.Tenn.1996) . Here, however, Plaintiff has not submitted affidavits or even names of potential Plaintiffs. Plaintiff's only proof of a widespread violation of the FLSA is the conclusory allegation that all the employees "were subjected to improper deductions from what should be their fixed salaries." (Resp. Mot. for Notice at 2). Defendant provides that she underpaid her employees, but also explains that she has reimbursed almost all of them after realizing her errors. [FN2] Therefore, it is unclear whether there exist potential Plaintiffs that satisfy the "similarly situated" requirement. Plaintiff fails to address this issue and the Court cannot approve even conditional certification without more of a showing.

FN2. Defendant asserts that:
Upon learning of Hall's claim that she was improperly paid, Dr. Burk's office administrator conducted an audit of the practice's payroll records and calculated the amount each current and former employee should have been paid with overtime paid at time and ahalf. All current employees have received payment for the full difference between what they were paid and what they should have been paid. With respect to former employees, notices were sent to all of them and as of the date of this Response, checks have been mailed to seven (7) of the eleven (11) former employees. Two more have signed for the letter but not yet requested checks. Two others have either not claimed their letters or they have been returned for forwarding. The total amount paid to all current and former employees is approximately $11,500.
(Resp. Mot. for Notice at 3).

The second test used by the Court in *Shushan v. University of Colorado,* 132 F.R.D. 263, 265 (D.Colo.1990) is composed of the requirements of Fed. R. Civ. P. 23(c) , i.e. "numerosity," "commonality," "typicality," and "adequacy of representation." Plaintiff has completely failed to make a showing under this test, except for the conclusory allegations provided in the Complaint and therefore fails this test. *See H & R Block, Ltd.,* 186 F.R.D. at 401 .

This Court has a "responsibility to avoid the 'stirring up' of litigation through unwarranted

solicitation." *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266-67 (D.Minn.1991). At this time, Plaintiff has failed to provide factual evidence in support of either test and therefore Plaintiff's Motion for Notice should be DENIED without prejudice. Given the Court's reasons as stated above, it is unnecessary to reach the merits of Plaintiff's request for limited discovery and it is also DENIED.

B. Motion to Void Releases, for Corrective Notice, and for Limited Expedited Discovery

Subsequent to filing the Motion for Notice and Limited Discovery, Plaintiff filed an Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery. This Motion addresses the validity of "releases" signed by current and former employees of the Defendant in exchange for receipt of back pay. Without addressing the merits of Plaintiff's argument that the releases are void, this Court finds that Plaintiff lacks standing to assert a claim of the putative Plaintiffs' (i.e. the other employees) settlements. To establish standing,
**\*4** [F]irst, the Plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized (citations omitted); and (b) 'actual or imminent, not 'conjectural' or 'hypothetical' (citations omitted). Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be 'fairly ... traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the Court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1991). In this case, Plaintiff has not established an injury caused by the putative Plaintiffs' settlements. Courts have voided releases where signatories of the releases were Plaintiffs in the class action, but the only Plaintiff here has not signed a release. *See O'Brien v. Encotech Constr. Servs., Inc.,* 203 F.R.D. 346, 349 (N.D.Ill.2001) ("Plaintiffs assert that two named Plaintiffs ... have signed releases, and both wish to be part of the current action. Therefore, standing and ripeness are not impediments to the filing of a motion to declare their releases void."). The Court finds that Plaintiff does not have standing to contest the releases and therefore, Plaintiff's Motion to Void Releases is DENIED. Given this ruling, the Motion for Corrective Notice and for Limited Discovery is also DENIED.

C. Motion for Protective Order

Plaintiff's two-sentence, conclusory request for a protective order should be denied. This Court has authority to intervene in the notice process, *see O'Brien,* 203 F.R.D. at 348, but the reasons cited by the Plaintiff are insufficient to warrant issuing a Protective Order at this time. Plaintiff's Motion for Protective Order is hereby DENIED without Prejudice.

III. CONCLUSION

Given the Court's reasons stated above, Plaintiff's Motion for Notice and for Limited Discovery is DENIED, Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery is also DENIED, and Plaintiff's Motion for a Protective Order is DENIED.
SO ORDERED.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1996 WL 938231
4 Wage & Hour Cas.2d (BNA) 573
**(Cite as: 1996 WL 938231 (D.Minn.))**

United States District Court, D. Minnesota.

Robert D. RAY, individually and on behalf of all others similarly situated,
Plaintiffs,
v.
MOTEL 6 OPERATING, LIMITED PARTNERSHIP, and MOTEL 6, G.P., INC., Defendants.

**No. 3-95-828.**

March 18, 1996.

Charles Anthony Bird , Bird & Jacosbsen, Steven S Fuller, Fuller Law Office, Rochester, for Robert D Ray, individually and on behalf of all others similarly situated, plaintiffs.

Robert Edward Cattanach , Kevin Joseph Saville , Dorsey & Whitney, Mpls, Michael F Marino, Eric A Welter, Frederic Freilicher, Reed Smith Shaw & McClay, McLean, VA, Charles Anthony Bird , Bird & Jacosbsen, Rochester, for Motel 6 Operating, Limited Partnership, Motel 6, G.P., Inc., Matthew Maggio, Jim Hoover, defendants.

ORDER

KYLE , District J.

**\*1** This matter is before the Court on Plaintiffs' Objections to the February 15, 1996 Report and Recommendation ("R & R") of United States Magistrate Judge Ann D. Montgomery. Magistrate Judge Montgomery recommends the Court deny the Plaintiffs' Motion for Expeditious Facilitation of Class Notice and that the claims of the Plaintiffs as a class be dismissed. Plaintiffs object to the R & R in its entirety.

The Court has reviewed the Objections and the record in this matter de novo as required by 28 U.S.C. § 636(b)(1)(C) and concurs with the conclusion and rationale of the Magistrate Judge with respect to the proposed issuance of class notice. The Court will adopt this portion of the R & R. The Court declines to adopt the recommendation that the claims of the Plaintiffs as a class be dismissed; a motion requesting such relief was not properly before the Court. *See* Local Rule 7.1(b).

Based on the foregoing, and a de novo review of all the files, records, and proceedings herein, the Court will ADOPT AS MODIFIED the February 15, 1996 Report and Recommendation of United States Magistrate Judge Ann D. Montgomery (Doc. No. 48) and IT IS ORDERED that Plaintiffs' Motion for Expeditious Facilitation of Class Notice (Doc. No. 29) is DENIED.

REPORT & RECOMMENDATION AND ORDER

The above entitled matter came on for hearing on February 6, 1996, before the undersigned United States Magistrate Judge pursuant to Plaintiffs' Motion for Expeditious Facilitation of Class Notice (Doc. No. 29). Prior to the hearing, Defendants brought a Motion for Continuance of the February 6, 1996, hearing date (Doc. No. 40). Charles A. Bird, Esq., and Steven S. Fuller, Esq., appeared on behalf of the Plaintiffs. Robert E. Cattanach, Esq., Michael F. Marino, Esq., and Eric Welter, Esq., appeared on behalf of the Defendants.

## BACKGROUND

Plaintiff Robert Ray, and approximately 14 other persons similarly situated, have filed a complaint against Defendants pursuant to the Fair Labor Standards Act of 1938 (FLSA). Plaintiffs allege that while they were employed by Defendants as assistant mangers at motel facilities, Defendants denied them payment of overtime in violation of the FLSA. The only connection to Minnesota appears to be that named Plaintiff Robert Ray and his wife worked at one of Defendants' motels in Rochester, Minnesota. It seems that the other individual plaintiffs worked in motels in various other states.

Defendants operate approximately 775 motel properties throughout the United States. (Declaration of Cheryl Beuttas). The motels are divided into seven geographic regions with a regional vice president supervising each region. ( *Id.* ). The majority of the motels are run pursuant to a management team arrangement. The management team consists of an on-site manager and assistant manager, usually a husband and wife, with no live-in dependents. (Complaint). The team is responsible for the daily operations of the motel. ( *Id.* ). The manager is a salaried employee who may work over forty hours each week, and is an exempt employee from the FLSA overtime provisions. ( *Id.* ). The assistant manager is paid hourly and is not exempt from the FLSA. ( *Id.* ). [FN1] The management team is required to be available 24 hours per day. [FN2] ( *Id.* ). The area managers report to the regional vice presidents. (Beuttas Decl.).

FN1. An employer must compensate nonexempt employees at one-and-a- half times their regular rate for hours worked over 40 in a work week. 29 U.S.C. § 207 .

FN2. Effective 1993 Defendants implemented quality standards which included 24 hour desk coverage. (Defendant's Memorandum). Prior to 1993, the motels had a night bell to ring management between the hours of 11:00 p.m. to 7:00 a.m. ( *Id.* ).

**\*2** Defendants establish a separate annual budget for each motel. (Defendant's Memorandum in Support of Motion to Dismiss Class Allegations). The Defendants have a written policy concerning the payment of overtime wages. ( *Id.* ). The policy provides that nonexempt employees are entitled to overtime pay only upon the advance approval of the regional vice president. ( *Id.* ). Plaintiffs allege that Defendants told assistant managers that the job would require overtime but that they were not to record more than forty hours per week on their time cards. (Complaint). Plaintiff offers proof of Defendants plan for denying overtime payments through several affidavits. Plaintiffs also allege that Defendants budget and staffing policies implicitly demonstrate the need and practice for assistant mangers to work overtime. ( *Id.* ).

Plaintiffs seek authorization from the Court to send a written Notice of Class to all potential claimants under the FLSA statute. Plaintiffs assert that the proposed class would consist of between 1000 and 1500 present and former assistant managers and the class members would be distributed throughout the United States. (Plaintiffs' Memorandum in Support of Law).

# DISCUSSION

The FLSA permits employees to collectively sue an employer:
[a]n action to recover liability ... may be maintained against any employer ... by one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) .

The statute dictates that an employee can only be a party to an action by opting *in* to the action. Since Rule 23 of the Federal Rules of Civil Procedure regulating class actions operates through an opt- *out* procedure, employees may not bring FLSA representative actions under Rule 23 . *Whalen v. W.R. Grace & Co.,* 56 F.3d 504 (3rd Cir.1995) . At trial, each plaintiff would bear the burden of proving that work was performed for which he or she was not properly compensated. *Anderson v. Mt. Clemons Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) .

Determining whether a representative action is the appropriate means for prosecuting an action is in the court's discretion. *Glass v. IDS Financial Services, Inc.,* 778 F.Supp. 1029, 1081 (D.Minn.1991) (citing *Lusardi v. Lechner,* 855 F.2d 1062, 1074-75 (3rd Cir.1988) ). The analysis for determining the issuance of opt-in notices to other potential plaintiffs under the FLSA is: whether the plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exist. *Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 279 (D.Minn.1992) .

Determination of class status at the notice stage is often liberally authorized since the court has minimal evidence for analyzing the class. *Id.* However, permitting plaintiffs to issue class notice does not equal class certification. Authorizing class notice merely allows the plaintiffs to proceed as a class throughout discovery. The court can "decertify" the class following discovery when the court has more information to achieve a factual determination on the similarly situated question. *Id.*

**\*3** The determination of "similarly situated" is achieved by analyzing various factors on a case by case basis. *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1213 (5th Cir.1995) (discussing line of cases that do not define "similarly situated" but conduct an ad hoc analysis); *see also Ulvin v. Northwestern Nat. Life Ins. Co.,* 141 F.R.D. 130, 131 (D.Minn.1991) (Magnuson, J.); *Lusardi v. Xerox Corp.,* 122 F.R.D. 463, 465 (D.N.J.1988) .

The Court in *Ulvin* listed various factors supporting decertification of the action for failing to present a group of similarly situated plaintiffs:
[T]he class members vary significantly as to age, year of termination, type of termination, division in the company in which they worked, employment status, supervisors and salaries.

141 F.R.D. at 131. In reaching the decision to decertify, the Court in *Ulvin* quoted the factors cataloged in *Lusardi* for decertifying a representative action:
The members of the proposed class come from different departments, groups, organizations, suborganizations, units and local offices within the Xerox organization. The opt-in plaintiffs performed different jobs at different geographic locations and were subject to different job actions concerning reductions in work force which occurred at various times so as a result of various decisions by different supervisors made on a decentralized employee-by- employee basis ....

*Id.* The Court in *Lusardi* further reasoned that the presence of 1300 plaintiffs presented significant manageability problems to the extent that the case was unsuitable for class treatment. 122 F.R.D. at 467 ("Manageability of a jury trial in which there would be more than 1300 separate trials would not be possible."). Similarly, although the Court in *Severtson* did find the plaintiffs to be similarly situated, in so deciding, the Court distinguished the *Lusardi* case: "Unlike *Lusardi,* the potential plaintiffs in the present case do not appear to be so diverse as to render them unmanageable as a class." 141 F.R.D. at 279 n. 1.

Furthermore, the Court in *Ulvin* was not persuaded to certify the class based upon the allegations of a company-wide plan of discrimination. 141 F.R.D. at 131. The Court first reasoned that the company's written policy specifically provided that age discrimination would not be a factor in termination. The Court further noted that the plan's implementation occurred on a decentralized level by local management, rather than through central authority. *Id.; see also Lusardi,* 122 F.R.D. at 466 (the described plan was implemented and managed at the local level).

In contrast, courts have permitted the issuance of class notice and the certification of class status when it was determined that a class action would effectuate the remedial purpose of the underlying action. *Glass,* 778 F.Supp. at 108 (ADEA claim); *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J.1988) (ADEA claim).

**\*4** The Court is aware that the lenient standard at the notice stage encourages permitting an action to proceed as a class until discovery is completed. However, in the present case, the facts before the Court are extensive, accordingly there is no need for discovery in order to reach a determination.

The facts before the Court illustrate some similarities among the plaintiffs. First, the Plaintiffs all were or are employed in the same position pursuant to a similar management plan as members of a management team consisting of a manager and an assistant manager. (Complaint). Second, Plaintiffs were or are employed by the same corporate entity as their employer. ( *Id.* ). Finally, Plaintiffs allege a common illegal plan enacted by Defendants in violation of the FLSA. ( *Id.* ).

Despite these similarities, there are countless differences between the Plaintiffs. The Plaintiffs joined in this action so far are employed in five different regions (Defendants' Memorandum); the Plaintiffs have worked at a minimum of thirty-nine different properties ( *Id.* ); the Plaintiffs have worked in at least twenty different states ( *Id.* ); and, the Plaintiffs have worked at motel properties that vary widely as to the number of rooms and budgets. ( *Id.* ). Finally, the amount of overtime hours worked varies between Plaintiffs, which demonstrates a lack of commonality for damages. ( *Id.* )

In comparing the list of similarities and differences this Court is guided by the decisions of this district, namely the Court's decision in *Ulvin.* The Court's reasoning in *Ulvin* demonstrates that it is not enough that all the plaintiffs share the same employer and that they allege a common scheme. Rather, the court must also look to specific factual similarities or differences and manageability concerns. Similar to the factors necessitating decertification in *Ulvin* and *Lusardi,* the members of this proposed class come from "different local offices" or "offices in the company," "different geographic locations" and "different supervisors and salaries." *Ulvin* 141 F.R.D. at 131 (quoting in part *Lusardi,* 122 F.R.D. at 466).

Moreover, the illegal overtime plan alleged by Plaintiffs in the present action is not necessarily carried out through central management. First, official written policy dictates that overtime will be paid in compliance with the FLSA. Second, if an illegal scheme exists at all, it is implemented on a

decentralized level. Specifically, the approval of overtime is controlled by area supervisors. Further, in that Plaintiffs also allege that budget plans demonstrate a need for improper overtime, it is notable that the budgetary plans differ according to region and property. The evidence does not indicate that all the Plaintiffs sustained injury from one unlawful policy. *Ulvin,* 141 F.R.D. at 131; *Lusardi,* 122 F.R.D. at 466. In addition, the Court notes that this action does not involve a remedial statute, such as the ADEA, which encourages class action litigation to prove discriminatory plans. However, nothing in this memorandum should be construed as prohibiting Plaintiffs from bringing anew a similar request for authorization for class notice on a smaller scale, such as region by region.

**\*5** The discrepancies between Plaintiffs' employment circumstances and the significant manageability problems inherent in a trial of 1000 plus individuals demonstrate that it is inappropriate to pursue this case as a class action.

ORDER

Based upon the foregoing and all of the files, records and proceedings herein, IT IS HEREBY ORDERED that:

Defendants' Motion for Continuance of the hearing scheduled for February 6, 1996, (Doc. No. 40) is DENIED as MOOT.

RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein in IT IS HEREBY RECOMMENDED that:

Plaintiffs' Motion for Expeditious Facilitation of Class Notice (Doc. No. 29) be DENIED. The claims of the Plaintiffs as a class should be DISMISSED with leave to file individual claims.

Pursuant to Local Rule 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by March 4, 1996, a writing which specifically identifies those portions of this Report to which objections are made, the basis of those objections and a brief in support thereof. A party may respondto the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the district court is not required by 28 U.S.C. Sec 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by February 27, 1996, a complete transcript of the hearing.

1996 WL 938231, 1996 WL 938231 (D.Minn.), 4 Wage & Hour Cas.2d (BNA) 573

END OF DOCUMENT

**CERTIFICATE OF SERVICE**

I certify that on the date shown below, I served a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND TO SEND COURT-SUPERVISED NOTICE TO PUTATIVE MEMBERS OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 126(b)** on counsel for the Plaintiffs, by U.S. mail, postage prepaid, and addressed as follows:

> Mr. Robert J. Willis, Esq.
> P.O. Box 1269
> Raleigh, NC 27602
>
> Carol L. Brooke
> North Carolina Justice and Community Center
> P.O. Box 28068
> Raleigh, NC 27611
>
> Jack Holtzman
> North Carolina Justice and Community Center
> P.O. Box 28068
> Raleigh, NC 27611

This the 10 day of March, 2003.


                                        _____
                                        W.R. Loftis

**OF COUNSEL:**

CONSTANGY, BROOKS & SMITH, LLC
100 N. Cherry St., Suite 300
Winston-Salem, NC 27101
Telephone: 336-721-1001
Facsimile: 336-748-9112