IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| FELIPE DE JESUS DE LUNA-GUERRERO and BALDOMERO GUTIERREZ DE LUNA, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| THE NORTH CAROLINA GROWER'S ASSOCIATION, INC., and MARCUS THIGPEN, on behalf of himself and all other similarly situated members of the North Carolina Growers Association, Inc., | ) ) ) ) ) ) | Civil Action No.: 4:02-CV-173-H(4) |
| Defendants. | ) ) | |

JAN 15 2004

## NAMED DEFENDANTS' MEMORANDUM IN OPPOSITION TO NAMED PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The facts of this case and much of the law have already been thoroughly briefed by both parties. In this opposition, the Named Defendants ("Defendants") incorporate by reference their Memorandum in Support of Named Defendants' Motion for Summary Judgment ("Defendants' Original Memorandum"), the Affidavit of Stan Eury in Support of Named Defendants' Motion for Summary Judgment ("Eury Aff. II"), and Named Defendants' Reply Brief ("Defendants' Reply Brief"). They also respectfully refer the Court to the Affidavit of Stan Eury in Support of the Named Defendants' Motion for Summary Judgment and in Opposition to the Plaintiffs' Motion for Summary Judgment

("Eury Aff. III") and the Affidavit of James S. Holt in Support of the Named Defendants'

Motion for Summary Judgment and in Opposition to the Plaintiffs' Motion for Summary

Judgment ("Holt Aff."), which are being submitted with the instant Memorandum.

## STATEMENT OF FACTS

The Defendants incorporate by reference the facts as outlined in Defendants'

Original Memorandum, Defendants' Reply Brief, the Stipulations, and the affidavits

submitted with this Opposition as well as the Defendants' Motion for Summary

Judgment.

## ARGUMENT

**I.      In the context of H-2A employment, transportation, visa, and border-
crossing expenses are primarily for the benefit of the employee, not the
employer.**

The Defendants discussed this issue at length in their Defendants' Original

Memorandum and incorporate that discussion by reference.  Further, the Defendants note

that the Plaintiffs fail to quote the relevant language from 29 C.F.R. §531.32(c).  The

statute itself – 29 U.S.C. §203(m) – does not provide guidance as to which activities are

"primarily for the benefit of the employer."  However, the regulation does.  As discussed

(and quoted) at length in the Defendants' original memorandum, the regulation provides

only one example of transportation-related expense that is primarily for the benefit of the

employer:  "railroad maintenance-of-way employees" – that is, employees who travel

along a railroad line during their working hours to maintain the tracks. The Plaintiffs do not even acknowledge that this is the sole transportation-related example in the regulation – presumably because they would be unable to explain how this type of "job-related travel" is analogous to travel from Mexico to the United States to take a farm labor job.

## A. A closer look at the *Glassboro* Cases and *Torreblanca*

As discussed in the Defendants' Original Memorandum, the *Arriaga* case was wrongly decided and should not be followed, in part because the Eleventh Circuit did not have the benefit of the 1994 letters from Secretary Reich and Wage-Hour Administrator Echaveste. Even less should the *Glassboro* decisions from the federal court in New Jersey be followed. *See Marshall v. Glassboro Svc. Ass'n, Inc.*, 1979 WL 1989 (D.N.J. 1979) ("*Glassboro I*"); and *Brock v. Glassboro Svc. Ass'n, Inc.*, 1987 WL 25334 (D.N.J. 1987) ("*Glassboro II*"), *aff'd without opinion*, 841 F.2d 1119 (3d Cir.)[1], *cert. denied*, 488 U.S. 821, 109 S. Ct. 64, 102 L. Ed.2d 42 (1988) (copies attached to Plaintiffs' Memorandum in Support of Motion for Summary Judgment). The Plaintiffs, not surprisingly, have failed to provide a thorough discussion of the *Glassboro* decisions; however, a close analysis is important because they form the foundation upon which this entire litigation is based. As will be demonstrated below, the foundation is not "structural."

---

[1] The Plaintiffs contend that the Third Circuit has addressed the reimbursement issue, but cite to the district court opinion. In fact, the Third Circuit affirmed the district court without opinion. A copy of the Third Circuit affirmance without opinion is attached.

In *Glassboro I*, the plaintiffs, Puerto Rican farm laborers, travelled from Puerto Rico to New Jersey, and their expenses were advanced by the defendant-employer. After starting employment, the workers then repaid the money through payroll deductions. If a worker completed his term of employment, he received from the employer all the travel money that he had previously reimbursed, plus return airfare to Puerto Rico. If the worker did not complete the term, he never received his reimbursement money back or his return airfare. *This latter group of workers* sometimes netted below the federal minimum wage in effect at the time. *See Glassboro I*, 1979 WL 1989 at *1.[2] The minimum wage status of the former group – by far, most analogous to the Plaintiffs in this case – was never litigated at all.

Judge John Gerry found that §203(m) was ambiguous, and cited 29 C.F.R. §531.32(c) but only in the most summary fashion.[3] He also accepted the 1970 opinion letter WH-92, which even the *Arriaga* court has since held is unworthy of deference, noting that the defendant had not "challenged the reasoning of the [Wage Hour] Administration." *Glassboro I*, 1979 WL 1989 at *2.

Based primarily on the since-discredited WH-92, Judge Gerry found in favor of the plaintiffs. In addition to the superficial legal analysis in *Glassboro I*, the facts are

---

[2] "If the workers complete his [sic] term of hire with Glassboro, Glassboro gives him, one, the cost of air fare paid back by the worker already to the member farm and two, a ticket home to Puerto Rico or its cash equivalent. However, if the worker doesn't complete his term of hire, he winds up having to pay his air fare to the farm; Glassboro *never* reimburses him. *In the latter case*, the loan repayments *sometimes* have the effect of bringing the employee's weekly wage below the Federal minimum wage. *The plaintiff addresses itself only to this latter situation . . . .*" 1979 WL 1989 at *1 (emphasis added).

[3] Here is the entire discussion of 29 C.F.R. §531.32(c) in *Glassboro I*: "In 29 CFR Section 531.32(c) the [Wage Hour] Administration ruled that transportation charges are to be considered primarily for the employer's benefit where such transportation is an incident of that employment." *Glassboro I*, 1979 WL 1989 at *2.

distinguishable from the facts in the instant case. First, as stated above, the plaintiffs had never been reimbursed for their transportation expenses. Second, the case involved actual, not "*de facto,*" deductions. Third, there was no H-2A issue because the case was decided in 1979, and therefore there was no "50-percent" provision. Finally, and perhaps most importantly, although the court's decision was cryptic, it appears that the determination that the plaintiffs were below the minimum wage was based on their net income through the entire season. There is no indication whatsoever in *Glassboro I* that the issue was whether the expenses had to be reimbursed in the first workweek – only that they had to be reimbursed at some point before the end of the season to the extent that they took the worker's net pay below minimum wage.

In *Glassboro II*, the defendant and judge were the same, but the plaintiff was the USDOL. After the defendant had lost the original case in 1979, it entered into a consent order and agreed that it would no longer deduct transportation expenses. However, the USDOL determined that the defendant had subsequently begun advancing transportation costs to the workers and then "requesting" "voluntary" repayment. The USDOL brought a contempt action, and as a result the defendant and the USDOL entered a new Consent Amendatory Order ("CAO") in which the defendant agreed to discontinue the new practice. After the CAO was entered, the defendant began requiring its workers to pay their own bus fare from the airport to the farms at which they were to be employed. The USDOL brought yet another action – *Glassboro II* – against the defendant, contending that it was in contempt of the CAO. The court agreed with the defendant that the FLSA did not require the employer to pay these transportation expenses; however, based on its

reading of 29 C.F.R. §531.32(c) (with ellipses in place of the key transportation-related provisions) and the discredited WH-92, it found in favor of the USDOL. Here is the verbatim quote from the court's decision (ellipses in original):

> The cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages. Items . . . which have been held to be primarily for the benefit of the employer . . . include . . . transportation charges where such transportation is an incident of and necessary to the employment . . .

*Glassboro II*, 1987 WL 25334 (D.N.J. 1987) at *5. The selective quote is conclusory and provides no guidance that would help an employer determine precisely which types of transportation were "an incident of and necessary to the employment."

The actual regulation, with the omitted text in bold, is as follows:

> The cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages. Items . . . which have been held to be primarily for the benefit of the employer . . . include . . . transportation charges where such transportation is an incident of and necessary to the employment **(as in the case of maintenance-of-way employees of a railroad)** . . .

What the *Glassboro* cases really seem to involve is a relatively unsophisticated defendant who tried the court's patience by repeatedly seeming to comply with the letter of the relevant orders while evading the spirit. *See, e.g., Glassboro II* at *3: "Plaintiff's

instant contempt application asserts that defendant continues to flout this court's orders through a contract provision which requires the migrants to pay their own transportation expenses." This was the second time the USDOL had alleged that the defendant was in contempt and the third time the case had been before this particular judge. Moreover, the judge pointed out that the defendant had had ample time to challenge the CAO in a more timely manner if he had desired. *See id.* at 6-7. "Instead, . . . defendant chose to put its own interpretations on our orders and on the requirements of the Act and only now, facing prosecution for contempt, urges its interpretations upon us." *Id.* at *7. Thus, it seems safe to assume that the judge was not inclined to entertain defense arguments at this late stage about the true meaning of §203(m). There is no evidence from either decision that the defendant put forth a serious challenge to the validity of WH-92 or pointed out that the transportation expenses at issue in his case were not remotely analogous to the transportation expenses of railroad maintenance-of-way employees.

As with *Glassboro I*, the facts of *Glassboro II* were again distinguishable from the facts of this case. *Glassboro II* – like *Glassboro I* – appeared to involve a *complete* failure to reimburse, not just a reimbursement that occurred after the first workweek. *See Glassboro II*, 1987 WL 25334 at *2 ("The defendant required its employees to pay the cost of inland bus transportation from the airport (typically Newark) to the farm labor camps [with no indication that the workers were ever reimbursed]." *See also id.* at *4: "Plaintiff's argument has two parts. First, he argues that the requirement that the migrant workers bear their air transportation costs constitutes contempt of this court's orders. Second, he asserts that the requirement that the migrant workers pay their own inland

ground transportation costs constitutes contempt of this court's orders." And, again, there is no indication that H-2A status was involved in *Glassboro II*.

Virtually everything that supports the Plaintiffs' position in the instant case –the new opinion letter that was rumored to be forthcoming in 1993, the attempts of low-level USDOL officials to require farmers to reimburse transportation expenses in the first workweek[4] – is founded upon a misapplication of these two *Glassboro* decisions. But if the foundation is rotten, the entire edifice falls. The *Glassboro* foundation is rotten because the facts are inapposite and because the issue was apparently briefed, argued, analyzed, and – in the case of *Glassboro II* – affirmed, in only the most superficial manner. Thus, the entire structure built upon it must also fall.

*Torreblanca v. Naas Foods, Inc.*, 1980 WL 2100 (N.D. Ind. 1980) (copy attached to Plaintiffs' Memorandum) should likewise not be followed because of its complete lack of analysis of the reimbursement issue and its failure to even acknowledge, much less discuss, the implications of the "railroad maintenance-of-way" example in 29 C.F.R. §531.32(c). Here is the complete legal "analysis" of this issue in *Torreblanca*:

> Wages paid to an employee can include the cost of "board, lodging, or other facilities" furnished by an employer. 29 U.S.C. §203(m). 29 C.F.R. §531.32 states that transportation charges cannot be included "where such transportation is an incident of and necessary to the employment." For seasonal migrant workers, transportation is an incident of employment. This position has been taken by the Wage and Hour Division of the United States Department of Labor, and this position is reasonable. "Such

---

[4] *See generally* discussion in Defendants' Reply Brief, filed on January 7, 2004. The only exception is the *Arriaga* decision, which correctly rejected both *Glassboro* decisions as precedent. *See Arriaga*, 305 F.3d 1228, 1239-40 (11th Cir. 2002).

administrative interpetations are to be given considerable weight in construing federal legislative acts."

*Torreblanca*, 1980 WL 2100 at *5 (citations omitted). This analysis omits the pivotal language of 29 C.F.R. §531.32(c) and uncritically adopts the USDOL's position in its old opinion letters. For the latter reason, even the *Arriaga* court refused to follow it. *See Arriaga*, 305 F.3d 1228, 1239 ("To support [its] conclusion, the [*Torreblanca*] court apparently relied exclusively on opinion letters of the Wage and Hour Administrator. . . . Because it provides no other rationale for its conclusion, *Torreblanca* is not persuasive.")

*Torreblanca* is also factually distinguishable from the instant case. *Torreblanca* involved actual, not "*de facto*" deductions. *Torreblanca* was decided in 1980, before IRCA was enacted, and did not involve H-2A workers. Therefore, the 50-percent rule was not involved at all.

The precedential value of the two *Glassboro* decisions and *Torreblanca* is problematic in many respects, but primarily because all three decisions fail to analyze WH-92 in light of the principles set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 2d 124 (1944). In assessing an agency interpretation, *Skidmore* requires courts to consider "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140. *See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (judiciary must reject administrative constructions

which are contrary to clear congressional intent). For the reasons already discussed at length, the Defendants submit that WH-92 is not worthy of deference under the principles set forth in *Skidmore* or *Chevron*. The courts in *Glassboro I* and *II*, and *Torreblanca*, failed to engage in *any* of the analysis required by *Skidmore* and *Chevron*.

**B.** **The Plaintiffs advocate a sweeping policy change that should be undertaken only through notice-and-comment rulemaking.**

A finding that transportation and related expenses from the worker's point of origin to the workplace are "primarily for the benefit of the employer" is a policy change of vast scope. The FOIA documents submitted by the Plaintiffs show the vehement opposition of the agricultural community (as well as of many members of Congress) and the potentially economically devastating effects on U.S. agriculture. However, the agricultural community is not the only industry that would be affected by such a finding. Not only agriculture but *any* industry that used immigrant labor would potentially be affected – and in our global economy, that means virtually any industry, period. Moreover, such a holding would have implications even for domestic hires and current employees. Any industry that hired new employees or transferred current employees would, as a matter of law, be responsible for the employees' moving and relocation expenses. Those employers who did not reimburse such expenses during the first workweek would be vulnerable to FLSA litigation.[5] Of course, the Plaintiffs contend that these are costs that employers should have to bear. The Defendants obviously disagree,

---

[5] Interestingly, one of the FOIA documents submitted by the Plaintiffs demonstrates that even the U.S. government might be vulnerable to FLSA litigation if the Plaintiffs' position is adopted. *See* letter dated April 4, 1992, from Ann Margaret Pointer to John R. Fraser, pointing out that concession employees at Yellowstone National Park are responsible for paying their own round trip transportation expenses between their home states and the Park. Plaintiffs' Exh. 25, at 146-47.

but in any event this is the type of sweeping policy decision that should be resolved through either legislation amending 29 U.S.C. §203(m) or through the notice-and-comment rulemaking process. It should not be resolved through conclusory opinion letters or even (with all due respect) through litigation between parties who cannot adequately represent all individuals and entities with an interest in the matter.

Such considerations were precisely the purpose behind the rulemaking provisions of the Administrative Procedure Act, 5 U.S.C. §553[6]. *See, e.g., Chocolate Mfrs. Ass'n of U.S. v. Block*, 755 F.2d 1098 (4th Cir. 1985) (stating that purpose of notice and comment procedure, among others, is to allow agency to benefit from experience and input of parties who file comments). *See also Saint Francis Memorial Hosp. v. Weinberger*, 413 F. Supp. 323 (N.D. Cal. 1975) (main purpose of 5 U.S.C. §553 is to allow interested parties to be heard before any official action is taken). The APA provisions protect not only employers but also individual employees. *See, e.g., United Farm Workers of America, AFL-CIO v. Chao*, 227 F. Supp.2d 102, 108 (D.D.C. 2002) (held, in farmworkers' union challenge to USDOL's changed interpretation of AEWR, that USDOL was required to provide notice and comment before making change).

---

[6] 5 U.S.C. §553 provides, in pertinent part, as follows: "(b) General notice of proposed rule making shall be published in the Federal Register . . .. The notice shall include – (1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. . . . (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. . . . (d) The required publication or service of a substantive rule shall [generally] be made not less than 30 days before its effective date . . .. (e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

The Plaintiffs argue that, if "getting a job" is primarily for the benefit of the employee rather than the employer, "then any destitute person willing to pay these up-front expenses to secure a job would be open to exploitation of the very kind that the FLSA was intended to abolish." Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 13. If the Plaintiffs were operating in an unregulated labor market, they might have a point. But they are not. They are operating in the heavily-regulated H-2A arena. The AEWR and housing requirements under the H-2A program, and, indeed, the "50-percent rule," are among the many measures that prevent exploitation of destitute workers. Moreover, the H-2A program is a beneficial alternative to illegal immigrant labor, in which especially workers are vulnerable to substandard wages, unsafe working conditions, lack of workers' compensation benefits, and sometimes even abandonment and death while en route to their jobs in the United States[7].

C.      **"Good Faith" and "Willfulness"**

Finally, the Defendants are entitled to the good-faith defense set forth in 29 U.S.C. §259. *See generally* Defendants' Original Memorandum and Defendants' Reply Brief; *see also* Eury Aff. II, Paras. 16-18; Eury Aff. III, Paras. 3-6; and Holt Aff., generally .

---

[7] There have been news accounts of unscrupulous individuals accepting money to bring illegal immigrants into the United States for jobs and then abandoning them in the desert, sometimes leaving the immigrants in locked vehicles to die.

The Plaintiffs also contend that the Defendants willfully violated the FLSA. This issue is more appropriately dealt with after liability issues are resolved. In any event, the the burden of proving willfulness is on the Plaintiffs, and the Plaintiffs have failed to meet that burden. The Defendants respectfully refer the Court to Eury Aff. II, Paras. 16-18; Eury Aff. III, Paras. 3-9; Holt Aff., generally; and Plaintiffs' Exh. 25 in its entirety. *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003), on which the Plaintiffs rely, is inapposite. In this case, it is undisputed that Eury and his agents made many attempts through proper channels to determine whether they were legally obligated to reimburse transportation expenses in the first workweek, and they were told that they had no such obligation until further notice. Thus, there is no way it can be said that the Defendants acted with reckless disregard as to whether their conduct violated the FLSA. *See A-One*, 346 F.3d at 918.

II.     **The Defendants did not violate the NCWHA or the common law of contracts unless they also violated the FLSA; because the Defendants did not violate the FLSA, the North Carolina claims fail.**

The Plaintiffs correctly make the obvious point that the North Carolina Wage and Hour Act ("NCWHA") and the common law of contracts are not identical to the Fair Labor Standards Act – in other words, that one could establish a claim under either North Carolina cause of action without necessarily establishing a claim for FLSA violation. Although this is correct as a matter of general principle, the fact remains that in this particular case, the Plaintiffs have no cause of action against the Defendants unless they can also establish that the Defendants violated the FLSA.

## A.    NCWHA

The Plaintiffs allege that the Defendants violated N.C. Gen. Stat. §95-25.6, which requires timely payment of wages earned.  If the farmers were legally obligated (either through the FLSA or as a matter of contract) to reimburse the workers  for their transportation, visa and border-crossing expenses in the first workweek, then the Defendants agree that their failure to do so would have violated the NCWHA.  Thus, to establish a violation, the Plaintiffs must show either (1) that the Defendants violated the FLSA, or (2) that the Defendants promised the workers that transportation, visa and border-crossing expenses would be reimbursed in the first workweek.[8]

The only basis, apart from the FLSA, for a violation of the NCWHA in this case would be if the farmers had breached a promise to reimburse transportation before the 50-percent point of the season, or visa and border-crossing expenses ever.  However, the Plaintiffs put forth no evidence that such a promise was ever made.  Thus, the analysis circles back to whether the Defendants' failure to reimburse during the first workweek violated the FLSA.  Because it did not, the Plaintiffs cannot establish a violation of the NCWHA.

---

[8] More precisely, the NCWHA would require that an employer reimburse expenses when promised – thus, if the farmers promised to reimburse expenses *at any point* and failed to do so, they would face liability under the NCWHA.

**B.    Common law of contracts**

To establish a common-law claim for breach of contract, the plaintiff bears the burden of proof. *See, e.g., Orthodontic Ctrs. of America, Inc. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575, *rev. denied*, 356 N.C. 304, 570 S.E.2d 727 (2002). The plaintiff must first establish that a contract existed. A valid contract requires an offer, an acceptance, consideration, and mutuality of assent to the contract's terms. *See, e.g., Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980); *Cap Care Group, Inc. v. McDonald*, 149 N.C. App. 817, 822, 561 S.E.2d 578, 582 , *rev. denied*, 356 N.C. 611, 574 S.E.2d 676 (2002). "The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968), *citing Sell v. Hotchkiss*, 264 N.C. 185, 141 S.E.259 (1965); *Slate Planters' Bank v. Courtesy Motors*, 250 N.C. 466, 109 S.E.2d 189 (1959). There must be a "meeting of the minds" between the parties as to *all* essential terms of the contract. *See, e.g., Pike*, 274 N.C. at 11; *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995).

In keeping with the requirement of a "meeting of the minds," it is a well-established principle of contract law that if a term is left unspecified, then there is no contract. *See, e.g., Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974), *quoting Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921):

"If *any portion* of the proposed terms is not settled, or no mode agreed on by which they may be settled, *there is no agreement*." (Emphasis added.) *See also North Carolina Nat'l Bank v. Wallens,* 26 N.C. App. at 580, 584, 217 S.E.2d 12, 15 (1975): "Generally, a contract . . . which leaves material terms open . . . is nugatory and void for indefiniteness."

These principles defeat the Plaintiffs' breach of contract claim in this case. The Clearance Order does not address reimbursement in the first workweek, an obviously material term.[9] For this and other reasons, the Defendants contend that the Clearance Order is not a contract. To the extent that the Plaintiffs advocate "reading" first-workweek-reimbursement terms into the Clearance Order on the theory that they became part of the contract by operation of law, their argument should be rejected.[10] The factual material submitted in this case clearly establishes that Eury and his agents, on behalf of NCGA and the farmers, sought guidance numerous times from the USDOL regarding the reimbursement issue and were informed by the highest authorities in the USDOL that they were *not* required to reimburse the expenses at issue. *See* Eury Aff. II, Exhs. A and B; Eury Aff. III, Paras. 3-6; Holt Aff., generally. Thus, there is no evidence of the Defendants' assent to terms to the contrary.

---

[9] The Plaintiffs seem to implicitly acknowledge this; however, they contend that the boilerplate text in the acceptance letters from the USDOL to NCGA creates such a contractual obligation. However, there is no evidence that the acceptance letters formed the basis of any agreement between the Defendants and the workers, particularly in light of the many authoritative communications from the USDOL to members of Congress and of the agricultural industry that contradict the boilerplate language. Moreover, there is no evidence that the workers saw the acceptance letters or accepted employment with the expectation that their transportation, visa, and border-crossing expenses would be reimbursed in the first workweek.

[10] The Plaintiffs also state the obvious principle that a worker cannot contract away his FLSA rights. This principle would be relevant if the Defendants were asserting the Clearance Order as a "contract" defense to the Plaintiffs' FLSA claim, but they are not. The principle has no relevance at all to a common-law contract claim based on the Defendants' alleged breach of the Clearance Order.

The Plaintiffs have also presented no evidence that the workers accepted employment on the understanding that they would be reimbursed for these expenses in the first workweek. They have presented no evidence that the workers were told by the USDOL that they would be reimbursed for these expenses in the first workweek. Thus, there is not only no evidence of an offer to reimburse in the first workweek, but there is also no evidence of an acceptance, assuming *arguendo* that such an offer had been made, and no evidence of mutual assent. Because they have failed to establish at least three of the four essential elements of a breach of contract claim, the Plaintiffs' contract claim fails.

## CONCLUSION

For the reasons set forth herein, as well as in their Memorandum in Support of Named Defendants' Motion for Summary Judgment and Named Defendants' Reply Brief, and supporting material, the Named Defendants respectfully request that the Plaintiffs' Motion for Summary Judgment be denied.

This the _15th_ day of January, 2004.

_____
W. R. Loftis, Jr.
N.C. State Bar No. 2774


_____
Robin E. Shea
N.C. State Bar No. 15862


OF COUNSEL:

CONSTANGY, BROOKS & SMITH, LLC
100 N. Cherry St., Suite 300
Winston-Salem, NC 27101
Telephone: 336-721-1001
Facsimile: 336-748-9112

841 F.2d 1119 (Table)
**(Cite as: 841 F.2d 1119)**

**H**

(The decision of the Court is referenced in a "Table
of Decisions Without Reported Opinions"
appearing in the Federal Reporter. The Third
Circuit provides by rule for the reporting of
opinions having "precedential or institutional value.
An opinion which appears to have value only to the
trial court or the parties is ordinarily not published."
The Federal Reporter tables are prepared from lists
of cases terminated by judgment orders,
unpublished per curiam opinions and unpublished
signed opinions, indicating the disposition of each
case, transmitted by the Court. Third Circuit Rules,
App. 1, Internal Operating Procedures, Ch. 5, sec.
5.1, 28 U.S.C.A.)

United States Court of Appeals,
Third Circuit.

McLaughlin (Ann Dore)
v.
Glassboro Service Association, Inc.

**NO. 87-5654**

FEB 08, 1988

Appeal From: D.N.J., Gerry, J.

AFFIRMED.

841 F.2d 1119 (Table)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date copies of **NAMED DEFENDANTS' MEMORANDUM IN OPPOSITION TO NAMED PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AFFIDAVIT OF STAN EURY IN SUPPORT OF NAMED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO NAMED PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and AFFIDAVIT OF JAMES S. HOLT IN SUPPORT OF NAMED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO NAMED PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** were served on Plaintiffs' counsel by depositing a copy of the same in the United States Mail in Winston-Salem, North Carolina, postage prepaid, and addressed as follows:

Robert J. Willis, Esq.
Attorney at Law
P. O. Box 1269
Raleigh, NC 27602

Carol L. Brooke, Esq.
Jack Holtzman, Esq.
North Carolina Justice and Community
  Development Center
P. O. Box 28068
Raleigh, NC 27611

This the 15th day of January, 2004.

_____
Robin E. Shea

OF COUNSEL:

CONSTANGY, BROOKS & SMITH, LLC
100 N. Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

1