IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

FELIPE DE JESUS DE LUNA-GUERRERO and )
BALDOMERO GUTIERREZ DE LUNA, on )
behalf of themselves and all other similarly )
situated persons, )
)
Plaintiff, )
)
v. )
)
THE NORTH CAROLINA GROWER'S )
ASSOCIATION, INC., and MARCUS )
THIGPEN, on behalf of himself and all )
other similarly situated members of the ) Civil Action No.:
North Carolina Growers Association, Inc., ) 4:02-CV-173-H(4)
)
Defendants. )
_____)

AFFIDAVIT OF JAMES S. HOLT IN SUPPORT OF
NAMED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO NAMED PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

The affiant, having been duly sworn, affirms and states as follows:

1. My name is James S. Holt. I am Senior Economist with the law firm of McGuinness Norris & Williams, LLP, in Washington, D.C. I hold a Ph.D. degree in Agricultural Economics and provide consultation on agricultural labor and immigration matters to clients of McGuiness, Norris & Williams, LLP. During the period of time covered by the events described in this affidavit I provided consultation to the National Council of Agricultural Employers ("NCAE") H-2A Users Committee and the North

Carolina Growers Association, Inc. ("NCGA"), among other users of the H-2A program. I have personal knowledge of the facts stated herein.

2. I have been involved for many years with farm labor issues, including the H-2A program. In that capacity, I became aware of the controversy that developed after the decisions in the 1979 case of *Marshall v. Glassboro Svc. Ass'n, Inc.*, and the 1987 case of *Brock v. Glassboro Svc. Ass'n, Inc.* regarding whether farmers were required under the Fair Labor Standards Act ("FLSA") to reimburse certain transportation expenses. I became aware that some Wage and Hour personnel in the field in some areas of the country were telling farmers that they were required by the FLSA to reimburse migrant workers' costs of getting to the place of employment to the extent that failure to reimburse such expenses would take the workers' earnings below the FLSA minimum wage or other required minimum wage, and were making back wage demands of employers who failed to do so. I am also aware that as a result of my clients and others bringing this matter to the attention of members of Congress and the USDOL, in 1994 Secretary of Labor Robert B. Reich ("Reich") and Wage-Hour Administrator Maria Echaveste ("Echaveste") both issued letters ("the 1994 letters") stating that the U.S. Department of Labor ("USDOL") was studying the issue, and was not prepared to find that farmers who failed to reimburse these expenses were in violation of the FLSA. Echaveste was the top Wage and Hour official in the USDOL, and Reich was, of course, the top ranking official of any type in the USDOL. Upon knowledge and belief, neither Reich nor Echaveste, nor any of their successors up through the date of this affidavit, has ever retracted the position stated in the 1994 letters.

3.  Although the top two Labor officials had clearly stated, in writing, that they were not prepared to find FLSA liability based on a failure to reimburse inbound transportation expenses at the end of the first pay period, in my capacity as a farm labor consultant I continued to receive feedback – long after the 1994 letters – from farmers who said that some Wage and Hour compliance investigators and other Wage and Hour personnel were continuing to tell agricultural employers that transportation expenses were required to be reimbursed at the first pay period to the extent that failure to reimburse such expenses would take the workers' earnings below the FLSA minimum wage or other required minimum wages, and threatening employers with compliance actions if they failed to do so.

4.  During the mid- to late 1990's and into the year 2000, I raised this issue informally on numerous occasions with USDOL personnel. On all of these occasions I was told that the 1994 letters accurately stated the USDOL's enforcement policy – in effect, overruling the field personnel. Moreover, I became aware that in May 1996, Michael Ginley, Chief of Enforcement, USDOL, wrote a letter to Stan Eury of NCGA stating in essence that the 1994 enforcement policy was still in effect.

5.  In the spring of 2001 I became aware that Mr. Alfred "Hap" Perry, Region IV Regional Administrator for the Employment Standards Administration had announced that he would be holding a meeting in Bowling Green, KY on April 6, 2001 to advise growers on the USDOL's position with respect to reimbursement of inbound

transportation costs and other costs associated with securing employment. I attended this meeting, and was the only member of the public in attendance. Also in attendance at the meeting were Mr. Perry and four other government officials: Carol Merchant, Donald Outland, Bob Woodward and Kent Mason. I do not recall the exact titles and positions of these other attendees, but upon information and belief they were all state or federal Wage and Hour Division personnel. Mr. Perry did all of the talking at the meeting; the others present did not make any substantive remarks.

6. At the meeting Mr. Perry told me that he was speaking both in his capacity as the Region IV Regional Administrator of the Employment Standards Administration and also in his capacity as national coordinator of agricultural policy for the Wage and Hour Division, and that the positions he expressed were the positions of the Wage and Hour Division as of the date of the meeting (April 6, 2001).

7. Mr. Perry told me that the position of the Wage and Hour Division was that farmers were not required to reimburse workers for transportation or subsistence expenditures related to (a) travel from their homes to the U.S. consulate to obtain a visa, (b) travel to the U.S. border, or (c) travel from the U.S. border to the worker's place of employment unless the employer had promised to reimburse such expenses. Mr. Perry further stated that for workers employed under the H-2A program, the employer would be required to reimburse as required in 20 C.F.R. §655, which requires transportation expenses (but not visa or border-crossing expenses) to be reimbursed if the worker has completed 50 percent of the period of employment.

8. Mr. Perry also told me that there was no requirement to reimburse these expenses *at all* to H-2B workers, or to migrant and seasonal farmworkers who were not employed under the H-2A program unless the employer had promised to do so.

9. Mr. Perry specifically told me that "visa fees" – fees paid by a prospective alien worker to a foreign or U.S. government (including the interview fees, reciprocity fees, and border-crossing fees actually paid by aliens admitted under the H-2A and H-2B programs, whether paid directly to the governmental entity or paid to the employer or other third party who in turn paid the governmental entity) – did not have to be reimbursed unless the employer promised that he would do so.

10. Mr. Perry also stated that, beginning with April 6, 2001 and going forward, "recruitment fees" (fees paid to third parties for the purpose of referral for employment with a United States employer and/or for assistance in obtaining a foreign passport, applying for a U.S. visa, or similar services provided to a worker to facility his coming to the United States for employment in the H-2A or H-2B program) did not have to be reimbursed absent a promise by the employer that the employer would do so.

11. On April 26, 2001, I sent a letter to Mr. Perry setting forth the positions he had taken at the April 6, 2001 meeting. A copy of my letter to Mr. Perry is attached to this affidavit as Exhibit A. The letter specifically states, "Please advise me immediately if the above is not an accurate description of the positions you articulated at the meeting

with respect to these subjects." Exh. A, page 3. I have had no communication from Mr. Perry, written or oral, giving me any indication that the positions set forth in my April 26, 2001, letter were inaccurate.

12. Beginning in late 2000 and continuing in 2001, I attempted, in my capacity as H-2A technical consultant to the NCAE H-2A Users Committee, to arrange a meeting between representatives of the NCAE H-2A Users Committee and Wage and Hour Division officials in Washington to discuss enforcement issues that were plaguing the H-2A program. One of the dates set for such a meeting was May 31, 2001. I was requested by the USDOL to submit a list of topics for discussion at the meeting. Despite the Reich, Echevestte and Ginley letters and the Hap Perry meeting in Bowling Green, I continued to receive sporadic reports of Wage and Hour Division field personnel telling H-2A employers that transportation expenses must be reimbursed at the first pay period. Therefore, I included this issue among the list of topics I sent to Mr. Ginley on May 23, 2001 and May 24, 2001 to be addressed at the May 31, 2001 meeting. My intention in including this topic on the agenda for the meeting was to try to get the Wage and Hour personnel to put an end to the harassment and misinformation of growers in the field, and not because I had any doubt as to what the USDOL's policy actually was, since this had been clearly articulated numerous times, most recently by Hap Perry at the meeting in Bowling Green, KY on April 6, 2001. The meeting scheduled for May 31, 2001 was cancelled by the USDOL and was never rescheduled.

13. I am not aware that the position of the USDOL expressed in the 1994 letter from Reich and Echevestte, the 1996 letter from Ginley, and the Hap Perry meeting in Bowling Green, KY on April 2, 2001, has ever been changed or remanded.

This the 15th day of January, 2004.

_____
James S. Holt, Ph.D.

SWORN TO AND SUBSCRIBED BY ME
This the 15th day of January, 2004

_____
Notary Public
My Commission Expires: Sept. 30, 2005

LAW OFFICES
# McGuiness Norris & Williams, LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

SUITE 1200

1015 FIFTEENTH STREET, N. W.

WASHINGTON, D. C. 20005

202 789-8600
FAX: 202 789-1708
EMAIL: JHOLT@MNWLAW.NET

James S. Holt, Ph.D.
SENIOR ECONOMIST

EXHIBIT A

April 26, 2001

Mr. Alfred "Hap" Perry
Regional Administrator
Wage and Hour Division
U.S. Department of Labor
61 Forsyth Street, SW Room 7M40
Atlanta, GA 30303

Dear Hap:

    I appreciated the opportunity to meet with you, Carol Merchant, Donald Outland, Bob Woodward and Kent Mason on April 6 in Bowling Green, Kentucky to discuss the Wage and Hour Division's position on transportation costs, visa fees, and recruiting fees paid by alien workers to qualify for admission and employment in the United States as H-2A and/or H-2B workers, and to travel to work sites in the United States. I understand that you invited representatives of agricultural employers to attend this meeting for the purpose of clarifying the Wage and Hour Division's position on the matters discussed below. The purpose of this letter is to memorialize the positions I understand you to have expressed in that meeting.

    I understand that you were speaking at the meeting not only as the ESA Regional Administrator for the Atlanta meeting, but also as the national coordinator of agricultural policy for the Wage and Hour Division. I also understand that the positions you described at the April 6 meeting are the positions of the Wage and Hour Division as of that date, and that the Wage and Hour Division may take a different position in the future on any of the matters discussed.

    With respect to expenditures by workers for transportation and subsistence to travel from their homes to a U.S. consulate to obtain a visa, travel to the place of admission into the United States, and/or travel to an employer's place of employment, I understand that it is your position that the cost of this transportation and subsistence borne by the worker is not required to be reimbursed by the employer in the absence of a promise by the employer to reimburse such costs, except that H-2A-certified employers are required to reimburse transportation and subsistence costs to workers in H-2A certified occupations as provided for in the H-2A regulations at 20 C.F.R. 655. I further understand that it is your position that migrant and seasonal farmworkers not employed in

H-2A certified occupations, and domestic and/or alien workers employed in H-2B certified occupations, are not required to be reimbursed such costs.

With respect to the discussion of so-called "visa fees", by which we meant fees required to be paid by a prospective alien worker to a foreign or U.S. government (for example the interview fee, reciprocity fee and border crossing fee paid by Mexican H-2A and H-2B workers to the U.S. government), I understand that it is your position that such fees are not required to be reimbursed by the employer in the absence of a promise by the employer to reimburse such fees. I further understand that you agree that if such fees are paid by the worker to an employer or third party, and the employer or third party in turn pays such fees to a government entity on the worker's behalf, this does not change the situation. I further understand that your position described in this paragraph applies only to actual amounts required to be paid to governmental agencies, and not necessarily to amounts that an employer or third party may describe as a "visa fee" which are not required to be paid to a government agency.

With respect to the discussion of so-called "recruitment fees", by which we meant fees paid to third parties for the purpose of referral for employment with a United States employer and/or for assistance in obtaining a foreign passport, applying for a U.S. visa, or similar services provided to a worker to facilitate the worker's coming to the United States for employment as an H-2A or H-2B worker, I understand it is your position that prospectively from April 6, 2001 such fees are not required to be reimbursed by the employer in the absence of a promise by the employer to reimburse such fees.

I understand that it is your position that all of the above fees and costs must be disclosed to the worker by H-2A employers to comply with the disclosure obligations of the H-2A regulations, and that failure to do so may subject the employer to a disclosure violation under the H-2A regulations.

Please advise me immediately if the above is not an accurate description of the positions you articulated at the meeting with respect to these subjects.

Again, thank you for the opportunity to meet with you, and for clarifying your position on these important issues.

Sincerely yours,

James S. Holt